IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION

CIVISTA HEALTH INC., *et al.*,
    Plaintiffs,

v.      Civil Action No. 13-cv-00284-AW

GILBANE BUILDING COMPANY, *et al.*,
    Defendants.

## MEMORANDUM OPINION

Pending before the Court is Defendant Gilbane Building Company's Motion for Summary Judgment, Doc. No. 30, Plaintiffs' Rule 56(d) Motion, Doc. No. 32, and Gilbane's Motion for Leave to File Surreply, Doc. No. 41. For the reasons discussed below, Gilbane's Motion for Summary Judgment will be **GRANTED**, Plaintiffs' Rule 56(d) Motion will be **DENIED**, and Gilbane's Motion for Leave to File Surreply will be **DENIED AS MOOT**.

## I. FACTUAL AND PROCEDURAL HISTORY

Plaintiffs filed this action on January 28, 2013, based on damages sustained to their La Plata, Maryland property as a result of an earthquake and hurricane that struck the Washington, D.C. region in August 2011. Doc. No. 1. Defendants are Gilbane Building Company (Gilbane), which completed an Addition to the property in 2007, and Plaintiffs' insurer, Travelers Property Casualty Company of America. Plaintiffs generally allege that Gilbane's construction of the Addition was defective and originally stated claims for breach of contract, negligence, breach of express and implied warranties, and declaratory judgment against Gilbane.

On April 1, 2013, Gilbane moved for summary judgment on all claims against it. Gilbane relied on the accrual clause in its construction contract with Plaintiffs, which provided the following: "As to acts or failures to act occurring prior to the relevant date of substantial completion any applicable statute of limitations shall commence to run and any alleged cause of action shall be deemed to have accrued in any and all events not later than that date of substantial completion." Doc. No. 30-3 ¶ 13.7.1.1. It is not disputed that construction of the Addition was completed in 2007.

On April 16, 2013, Plaintiffs filed a motion for leave to file a First Amended Complaint against Defendants, which added a count for Fraud/Misrepresentation. *See* Doc. No. 31. The crux of the fraud/misrepresentation claim is that Gilbane misrepresented to Plaintiffs its competence to complete the Addition in compliance with all relevant building and fire codes. Plaintiffs allege that the State Fire Marshal found numerous defects in the structure in 2012 and that notwithstanding the obvious defects discovered by the Fire Marshal, Gilbane issued certificates of substantial and final completion without noting the defects, and Plaintiffs paid Gilbane based on these certificates. Defendants, including Gilbane, did not oppose Plaintiffs' Motion for Leave to Amend, Doc. No. 35, and the Court granted the Motion for Leave on May 29, 2013, Doc. No. 44. However, Gilbane also moves for summary judgment on Plaintiffs' fraud/misrepresentation claim for the same reasons it does so on the breach of contract, breach of warranty, negligence, and declaratory judgment claims. *See* Doc. No. 35 ¶ 2.

On April 18, 2013, Plaintiffs filed a Rule 56(d) Motion, which requested that the Court deny Gilbane's Motion for Summary Judgment or, in the alternative, defer the time for filing an opposition until completion of discovery. Doc. No. 32. Plaintiffs argued in their Rule 56(d) Motion that the accrual clause should not be enforced if it violates public policy, is unreasonable,

or where there is evidence or allegations of fraud. Plaintiffs asserted that it is not possible to fully and fairly address the issues of policy, reasonableness, and fraud and misrepresentation without a full evidentiary record. They cited the 2012 findings of the State Fire Marshal who discovered numerous fire code violations on the construction areas at issue. Plaintiffs alleged that these violations, which included numerous penetrations in the fire and infectious disease barriers, were overlooked, ignored, or hidden when Gilbane closed the areas and issued their certificates of substantial and final completion. *See* Doc. No. 31-1 ¶¶ 41-45; Doc. No. 32-1. In their reply brief, Plaintiffs also cite several "Above Ceiling Inspection" reports suggesting that Gilbane was aware of certain deficiencies relating to the fire and disease barriers in 2005 and 2006. *See* Doc. Nos. 37-1, 37-2.

In their Rule 56(d) Motion and attached affidavit, Plaintiffs sought discovery on the following issues: (1) whether the fire code violations escaped the notice of Gilbane; (2) whether Gilbane knew or should have known of the threats to public and patient health and safety; (3) whether Gilbane competently chose subcontractors and/or supervised their personnel, which may have bearing on whether Gilbane fraudulently induced Plaintiffs to enter the contract; (4) the accuracy, validity, and bona fides of the certificates of substantial and final completion; and (5) the nature and extent of Gilbane's and its subcontractors' communications and interactions with inspectors visiting the site, including anyone who had a role in fire code inspections. Doc. No. 32-1 ¶¶ 7-8, 10-11. Plaintiffs also sought discovery on what effect may be given to the red-lined contract document attached to Gilbane's Motion for Summary Judgment. *See* Doc. No. 32-1 ¶ 9.

The Court held a telephonic conference with the parties on May 29, 2013 to discuss the pending motions. Counsel for Plaintiffs argued that there was a genuine issue of material fact as

3

to what terms were agreed upon by the parties given multiple versions of the contract that it had in its possession, including versions that did not include the accrual clause. The Court granted Plaintiffs ten days to file supplemental briefing and exhibits in support of their Rule 56(d) Motion, and granted Defendants ten days to file responsive briefing, if they chose to do so. Doc. No. 44.

In its supplemental brief, Plaintiffs concede that the parties' agreement contained the accrual clause. Doc. No. 46 at 1. Plaintiffs therefore withdraw their request for additional discovery on the issue of whether the accrual clause was included in the parties' agreement. *Id.* at 1-2. Now, Plaintiffs oppose enforcement of the accrual clause on the grounds that (1) it is inconsistent with other contractual provisions and (2) Gilbane should be estopped from enforcing the provision due to its concealment of certain material facts. Gilbane filed responsive briefing on June 21, 2013. All pending motions are therefore fully briefed and ripe for the Court's consideration.

## II. STANDARD OF REVIEW

Summary judgment is only appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986). The Court must "draw all justifiable inferences in favor of the nonmoving party, including questions of credibility and of the weight to be accorded to particular evidence." *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 520 (1991) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). In ruling on a motion for summary judgment, "[c]redibility determinations, the weighing of the evidence and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ."

4

*Okoli v. City of Baltimore*, 648 F.3d 216, 231 (4th Cir. 2011) (quoting *Anderson*, 477 U.S. at 255).

To defeat a motion for summary judgment, the nonmoving party must come forward with affidavits or other similar evidence to show that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A disputed fact presents a genuine issue "if, after reviewing the record as a whole . . . a reasonable jury could return a verdict for [the non-moving party]." *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 959 (4th Cir. 1996) (citing *Anderson*, 477 U.S. at 248). Although the Court should believe the evidence of the nonmoving party and draw all justifiable inferences in his favor, a nonmoving party cannot create a genuine dispute of material fact "through mere speculation or the building of one inference upon another." *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985).

## III.   ANALYSIS

In Maryland, a civil action must be filed within three years from the date the cause of action accrued. Md. Cts. & Jud. Proc. § 5-101. Maryland courts have applied the discovery rule, which provides that a cause of action accrues when a plaintiff knew or reasonably should have known of the underlying wrong, to most civil causes of action. *See Poffenberger v. Risser*, 431 A.2d 677, 680 (Md. 1981). The Maryland Court of Special Appeals and the Fourth Circuit have held, however, that contractual terms providing for a different accrual date are enforceable under Maryland law. *See, e.g.*, *College of Notre Dame of Md., Inc. v. Morabito Consultants, Inc.*, 752 A.2d 265, 275 (Md. Ct. Spec. App. 2000) ("[W]e conclude that the provision in the parties' contracts that alters the normal rules governing the time for accrual of causes of action is enforceable."); *Harbor Court Assocs. v. Leo A. Daly Co.*, 179 F.3d 147, 151 (4th Cir. 1999) ("We therefore also agree that the Maryland courts would enforce the contractual provision

fixing the accrual date of any civil action to the date work on the project was substantially completed."). Therefore, Plaintiffs' claims for breach of contract, breach of warranty, and negligence are barred to the extent the accrual clause is enforceable.

Accrual clauses should not be enforced in all circumstances. Indeed, the Court of Special Appeals in *Morabito* noted that "[w]e do not purport, by virtue of our holding, to address the validity of contractual suit limitations in all cases." 752 A.2d at 275. Accrual clauses should be given effect "absent clear policy considerations to the contrary," and may be unenforceable where it was unreasonable or where there is a suggestion of fraud or misrepresentation. *Id.* at 273-76. Plaintiffs contend that discovery is necessary to address public policy concerns and fraud or misrepresentation.

With respect to public policy, Maryland courts have struck down voluntary bargains only "in those cases where the challenged agreement is patently offensive to the public good, that is, where the common sense of the entire community would pronounce it invalid." *Maryland-National Capital Park and Planning Comm'n v. Washington Nat'l Arena*, 386 A.2d 1216, 1228 (Md. 1978) (internal quotations omitted) (internal alterations omitted). Plaintiffs contend that enforcement of the accrual clause is unreasonable and would violate public policy given the allegedly defective workmanship and failure to comply with fire codes. However, Maryland courts have only nullified contractual provisions on public policy grounds in extraordinary circumstances. *Id.* at 1228-29 (noting the "disruptive effect" of invoking the "highly elusive public policy principle" and the need to "protect the public interest in having individuals exercise broad powers to structure their own affairs by making legally enforceable promises"). The *Morabito* and *Harbor Court* courts rejected arguments that the accrual clauses in those cases should be struck down on public policy grounds. *Morabito*, 752 A.2d at 275-76; *Harbor Court*,

6

179 F.3d at 149-51 (rejecting public policy argument even where fifteen-square-foot area of brick exploded off the building due to fundamental design and construction defects). The Court sees no reason why the circumstances of this case dictate a different result. Furthermore, none of the requested discovery in Plaintiffs' Rule 56(d) affidavit would create a genuine issue of material fact with respect to public policy or the reasonableness of the accrual clause.

Plaintiffs also contend that the accrual clause should not be enforced given their allegations of fraud and the need to further develop the factual record with respect to their fraud and misrepresentation claim. As discussed above, accrual clauses are generally enforceable under Maryland law subject to defenses such as fraud or misrepresentation. *Morabito*, 752 A.2d at 275-76. However, the fraud defense generally concerns the formation of a contract, not performance. *See, e.g.*, *Harbor Court*, 179 F.3d at 151 (noting that appellants did not allege that the contract containing the accrual clause was *induced* by fraud); *Jaguar Land Rover N. Am., LLC v. Manhattan Imported Cars, Inc.*, 738 F. Supp. 2d 640, 650 (D. Md. 2010) (holding that reformation of contract was not warranted where there was no evidence of fraud or inequitable conduct in contract's *formation*); *Hale v. Hale*, 513 A.2d 271, 274 (Md. Ct. Spec. App. 1986) ("[C]ontracts generally may be subject to rescission on a finding of fraud, duress, undue influence, or negligent misrepresentation *in their making*.") (emphasis added).

As discussed above, Plaintiffs allege that Gilbane misrepresented its competence to complete the Addition in compliance with relevant building and fire codes. Doc. No. 31-2 ¶ 38. Plaintiffs rely on section 2.2 of the construction agreement, in which Gilbane promised to perform in a good and workmanlike manner free from deficiencies and defects. *Id.* ¶ 39. Plaintiffs allege that Gilbane failed to choose, supervise and manage personnel and subcontractors to ensure compliance with building and fire codes. *Id.* ¶ 40. Plaintiffs cite a letter

7

from the State Fire Marshal who found various penetrations in smoke and fire barriers in the Addition's walls. *Id.* ¶ 41; Doc. No. 31-2 Ex. 3. Notwithstanding these defects, Gilbane issued certificates of substantial and final completion without noting the defects, and Plaintiffs paid Gilbane based on these certificates. *Id.* ¶ 42. Plaintiffs maintain that the certificates contained misrepresentations as to the state of construction, either negligent or knowing.

While under the heading of "fraud/misrepresentation," *the essence of these allegations* is that Gilbane was negligent or failed to perform in accordance with the construction agreement. Such claims are plainly barred by the accrual clause. *See Harbor Court*, 179 F.3d at 149-51 (barring claims for negligence and breach of contract pursuant to accrual clause). Furthermore, the discovery requested by Plaintiffs in their Rule 56(d) affidavit—specifically, whether the fire code violations escaped the notice of Gilbane, whether Gilbane knew or should have known of threats to public health and safety, the accuracy of the certifications of completion, and the nature of its communications with fire code inspectors—would not create a genuine issue of material fact. *See, e.g.*, *Amirmokri v. Abraham,* 437 F. Supp. 2d 414, 420 (D. Md. 2006) ("A Rule 56[(d)] motion for additional discovery is properly denied when the additional evidence sought to be discovered would not create a genuine issue of material fact sufficient to defeat summary judgment."); *McWay v. LaHood*, 269 F.R.D. 35, 38 (D.D.C. 2010) ("The non-moving party must show a reasonable basis to suggest that discovery would reveal triable issues of fact.").

The Amended Complaint also alleges, in conclusory fashion, that Plaintiffs were "induced into executing the Construction Agreement" based on Gilbane's misrepresentations. Doc. No. 31-2 ¶ 44. As discussed, the misrepresentations alleged by Plaintiffs are focused upon Gilbane's *performance* of the contract, and Plaintiffs have failed to allege with particularity any

8

facts suggesting that Gilbane's misrepresentations induced Plaintiff to *enter* the construction agreement. In its Rule 56(d) affidavit, Plaintiffs claim they need discovery as to whether Gilbane competently chose subcontractors and/or supervised their personnel, which may have bearing on whether Gilbane fraudulently induced Plaintiffs to entering the contract. Doc. No. 32-1 ¶ 8. The Court fails to see the connection between Gilbane's *performance* of its construction obligations and any misrepresentations in the *formation* of the contract. Plaintiffs' vague assertion that discovery is needed is insufficient to convince the Court that any discovery will be relevant to a claim of fraudulent inducement, particularly in light of the conclusory allegations in the Amended Complaint. The Fourth Circuit noted that "[g]enerally speaking, sufficient time for discovery is considered especially important when the relevant facts are exclusively in control of the opposing party." *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 246-47 (4th Cir. 2002) (citations and internal quotations omitted). If a fraudulent inducement claim existed here, Plaintiffs would be in possession of at least some of the particulars that would support the claim, including the nature of the misrepresentation, the individuals responsible for the misrepresentation, and the individuals that relied on the misrepresentation. Plaintiffs have neither pled the particulars of a claim nor provided any basis for the Court to conclude that discovery will support a fraudulent inducement claim.

In their supplemental brief, Plaintiffs now argue that Gilbane should be equitably estopped from enforcing the accrual clause in light of evidence that they concealed material construction defects from Plaintiffs. Plaintiffs rely on multiple "Above Ceiling Inspection" reports from 2005 and 2006 which specified various deficiencies in the fire and disease barriers in the Addition's walls. *See* Doc. No. 37 at 2-3; *see also* Doc. Nos. 37-1, 37-2, and Doc. No. 46 at 8. Plaintiffs contend that Gilbane and its agents concealed these deficiencies and therefore

9

lulled Plaintiffs into missing the limitations deadline. Plaintiffs further maintain that they relied on Gilbane's misrepresentations regarding the construction deficiencies by moving forward with the building project, making payments, and allowing the accrual clause to be triggered before filing a claim.

The Court of Appeals of Maryland has supplied the following definition of equitable estoppel:

> Equitable estoppel is the effect of the voluntary conduct of a party whereby he is absolutely precluded both at law and in equity, from asserting rights which might perhaps have otherwise existed, either of property, of contract, or of remedy, as against another person, who has in good faith relied upon such conduct, and has been led thereby to change his position for the worse and who on his part acquires some corresponding right, either of property, of contract, or of remedy.

*Knill v. Knill*, 510 A.2d 546, 549 (Md. 1986) (citations omitted). The Court is not aware of any Maryland cases that have addressed equitable estoppel in the enforcement of an accrual clause. However, the Court of Special Appeals has held that "the defense of limitations can only be barred by a defendant's fraud or conduct tantamount to constructive fraud. Negligence alone cannot estop a negligent party from asserting the defense of limitations." *Johns Hopkins Hosp. v. Lehninger*, 429 A.2d 538, 545 (Md. Ct. Spec. App. 1981). The *Lehninger* court further explained that "[c]onduct less egregious than intentional fraud will not toll the statute of limitations." *Id.* Negligent or ignorant misrepresentations are insufficient for tolling a limitations period. *Id.*

Plaintiffs' allegations of concealment fall far short of the heightened pleading requirements for a fraud claim. Indeed, Rule 9(b) of the Federal Rules of Civil Procedure

> prevents plaintiffs from pleading fraud solely for strategic purposes or without any reasonable basis for believing that fraud has occurred. . . . Plaintiffs are not allowed blindly to plead fraud and then hope that discovery reveals a basis for their allegations. . . . [R]ule 9(b) "mandates that fraud cannot be alleged merely on

the basis of suspicion and that a fraud suit cannot itself be the vehicle for initially uncovering the fraud."

*Blumenthal Power Co., Inc. v. Browning-Ferris, Inc.*, No. 94CV2612, 1995 WL 1902124, at *10 (D. Md. Apr. 19, 1995) (quoting *Gollomp v. MNC Fin., Inc.,* 756 F. Supp. 228, 232 (D. Md. 1991)). The allegations in the Amended Complaint, which rely largely on defects uncovered by the Fire Marshal in 2012, fail to identify with particularity the time, place, speaker, and contents of any false statements. *See, e.g.*, *Windsor Assocs., Inc. v. Greenfeld*, 564 F. Supp. 273, 280 (D. Md. 1983). And even if the Above Ceiling Inspection reports indicated that certain corrective action needed to be taken in 2005 and 2006, it cannot be inferred from the mere existence of these reports that Gilbane engaged in intentional fraud. Plaintiffs have therefore failed to plead fraud with particularity, have not raised a genuine issue of material fact supporting a conclusion that equitable tolling is warranted, and have not demonstrated that additional discovery will reveal triable issues of fact.

Finally, in their supplemental brief, Plaintiffs argue, for the first time, that the accrual clause should not be enforced because it is inconsistent with other provisions in the contract. Section 4.3.1, in defining "claim," stated that "disputes [between Owner and Contractor] shall be resolved by Owner and Contractor under the provisions of the Contract or by such rights and remedies as are otherwise available to them by law." Doc. No. 30-3 at 83. Section 13.4.1 provided that "[d]uties and obligations imposed by the Contract Documents and rights and remedies available thereunder shall be in addition to and not a limitation of duties, obligations, rights and remedies otherwise imposed or available by law." *Id.* at 75. Plaintiffs claim that these provisions preserve all common law remedies as against any limitation found in the parties' agreement, and that the accrual clause, which abrogates the common law discovery rule, is obviously inconsistent with these provisions.

11

Plaintiffs' reading of the cited provisions is incorrect. The provisions merely state that the parties have rights and remedies under both the terms of the contract and at law. The Court discerns no inconsistency between these provisions and the accrual clause. Even if the Court concluded that the accrual clause and cited provisions were in conflict, the Court would nonetheless be required to give effect to the more specific terms of the accrual clause. *See, e.g.*, *Heist v. E. Sav. Bank, FSB*, 884 A.2d 1224, 1228 (Md. Ct. Spec. App. 2005) (quoting *Fed. Ins. Co. v. Allstate Ins. Co.*, 341 A.2d 399, 407 (Md. 1975)) ("Where two clauses or parts of a written agreement are apparently in conflict, and one is general in character and the other is specific, the specific stipulation will take precedence over the general, and control it.").

Accordingly, the Court concludes that the accrual clause is enforceable and bars all of Plaintiffs' claims against Gilbane. Plaintiffs have neither raised a genuine issue of material fact nor presented a reasonable basis to conclude that additional discovery will reveal triable issues of fact. Gilbane is therefore entitled to summary judgment on all claims against it.

## IV. CONCLUSION

For the foregoing reasons, Gilbane's Motion for Summary Judgment will be **GRANTED**, Plaintiffs' Rule 56(d) Motion will be **DENIED**, and Gilbane's Motion for Leave to File Surreply will be **DENIED AS MOOT**. A separate Order will follow.

| __July 1, 2013__ | /s/ |
|---|---|
| Date | Alexander Williams, Jr.<br>United States District Judge |